Good morning, your honors. May it please the court. My name is Nicholas Wagner. I represent Jodi Bourg. Jodi Bourg was a 30-year employee of Aetna when she had cancer, and she informed her employer found out, and within a short period of time, she was told that her position was going to be eliminated. She was told this in approximately early February of 2011. Now this, notice that on the docket, the court saved the simplest case for the end, and this is a, as far as this hearing is concerned, this issue before the court, there's one piece of evidence before us that's relevant, and that is the job elimination memo that my client was given in February, on February 2, 2011, about the prospect that her job was being eliminated, and that needs to be reviewed in analyzing this one question issue before you. Counsel, with respect, I thought that your client had filed a claim with the California Department of Fair Employment and Housing, and that in her right-to-sue notice, she claimed that Aetna had, in quotes, laid her off, and in quotes, let her go on February 4, 2011. Isn't that evidence that we need to take into consideration? Let's look at that, okay? Yes. I'm looking at the DFVH complaint that was filed by my client that states as follows, and remember, this is a form complaint. It's a form box complaint, and it states that on or about February 4, 2011, she was laid off, denied employment, or denied accommodation. Now, in our closing brief, we address this issue significantly on pages 8 and 9 of our closing brief. You mean your reply brief? Yes, our reply brief, closing brief. It's called both, apparently. There is a – when you look at it, there are two major opinions. One is called Ong v. Cleland, 1981, that states that, as a general rule, since laypersons initiate this administrative process for resolving employment discrimination complaints, the procedural purpose of this administrative charge is to provide the basis for the DFVH to investigate the agreed employee's claim of discrimination. It is not intended as a limiting device. Well, counsel, that's one of the options, to ask the agency to investigate. Your client didn't choose that option, did she? I believe she did by filing this complaint. Well, she – no, she cited immediate right to sue notice. It was issued the same – That's one of the options, yes. And that was issued the same day she filed her complaint. Okay. That doesn't change the technical aspect of this DFVH charge and the Ninth Circuit's opinions that these are not supposed to be interpreted to limit the rights of the claimant, especially since this is recognized these are laypersons. We're not limiting the rights of the – of your client with respect to a DFVH complaint. We're questioning whether your client knew that Edna had terminated her employment as of the memo in February. She knew that there was an adverse employment action taken against her on that date. She also knew, if you look at the job termination memo, that she had until April 11th to find another position within the company. And if she didn't find another position within the company, and if she did not sign the waiver, then her termination date would be April 11th, 2011. Now, keep in mind the way we have to frame this here. This is a motion for summary judgment. So we have – the rule here is not was the lower court right, but it's a trial de novo. It's an analysis de novo. In other words, what would you do? Look at this memo. Is there a reasonable inference that someone looking at this memo could say, oh, the termination date is April 11th, 2011? It states exactly that language in the memo. But, Counsel, I – that is a reasonable interpretation. I would grant you that. But your client then in March goes to DEFEH and obtains a right to sue notice, which implies this wasn't just an adverse employment action in her mind. This was – she had been, quote, let go. Okay. So the question is, when is her termination date? And what – and Your Honor just stated that. It is a reasonable interpretation that someone looking at this memo can state, yeah, the employment termination date is April 11th. That's the issue in this case is, what is the termination date and is it reasonable for someone to infer that there's an issue of fact as to when that termination date is? And it states right in this – right in the memo that it's a – the employment termination date, if the waiver is not received, is April 11th, 2011. There's no denying that's what this memo states. Now, the memo also states that your last day of service will be February 6th, 2011. So it's contradictory. It's a contradictory memo. And as we know, when the drafter of an ambiguous or contradictory writing that occurs, then the – then the – So then we get to whether your client suffered any harm as a result of the ambiguity in the memo. She did not suffer harm until she had damages. And she did not have damages until April 11th, 2011. Well, she did not suffer harm. The question is whether she interpreted the memo – we have an ambiguous memo, and she interpreted it in a way that harmed her interest. How do you argue she interpreted that she had until April to file a claim in light of the fact she files this DFEH claim almost immediately? She chose to do that, to file it immediately. But she did not have any damages, nor did she lose her job and her termination become effective until April 11th. You cannot read this any other way. And even if you can, as Your Honor has stated, it is – it is reasonable. There's a reasonable inference that anybody looking at this memo could be confused and could see two different termination dates in here. And it's explicitly stated that the effective date of this action is as follows. Your employment termination date, if you do not sign the waiver, which she didn't, will be April 11th, 2011. So the fact that she chose to file her DFEH complaint early to get the process started does not obviate what the – a reasonable inference as to what her actual termination date is. In fact, Aetna says you will be terminated if you can't get another job here within the next nine weeks. But counsel, hold on. The memo also says as of February 6th, you are no longer positioned with the company. February 6th would be your client's last day of service. It says that. And then there's the possibility for severance pay. It says that. Right. But it also states that you have nine weeks to find another position here. Because the current one is gone. You've been fired. That might be a reasonable interpretation of it, a reasonable inference. And I started my argument by saying there are two possibilities for a termination date here. February 6th, 2011, or April 11th. Both are reasonable. I don't see how anyone could look at this memo and say, oh, neither one is – or one or the other is not reasonable. They are both reasonable inferences. And because they are reasonable, because of the standard on a motion for summary judgment, you have to give the benefit of this to the nonmoving party, especially when you're talking about a document that was written by the defendant. It must be construed – any ambiguities must be construed against them. So because of the standard we're talking about here, that standard that's in review here, you have to look at this memo and say, is it reasonable for someone looking at this memo, is it a reasonable inference that the termination date is April 11th, 2011? It states so right in the memo. And if you come to the conclusion that it's a reasonable summary judgment, you have to look at the summary judgment. Breyer. Counsel, do you believe your client pursued a legal claim when she filed the complaint with the FEH? Clement. That was the start of an administrative process that is required before you file a lawsuit. So that may be a matter of semantics, but it's not the standard by which we are – what's the issue? Breyer. I'm not actually willing to toll the statute of limitations while that was being considered, but she obtained the right to sue the very day she filed her claim. Clement. All right. So she – so she accrued a right to sue letter. That doesn't change the termination date, though, or a reasonable – or as to whether or not there is a genuine issue there. Breyer. How could she have obtained a right to sue letter if she's not been terminated? Clement. That is an act of a third party, an administrative agency. The defendant here has stated the date of her termination to be April 11, 2011. Now, had a lawsuit been brought before that date, it could have been dismissed because it was not yet ripe, because she had until April 11th before the termination date would be effective. Your Honors, I will choose to reserve three minutes for a rebuttal. Thank you very much. Very good. We'll hear from the appellee. Good morning, Your Honors. And may it please the Court, my name is Douglas Johnston. I represent the appellees Aetna, Inc., Aetna International, Inc., and the improperly named Aetna Global Benefits. Your Honors, I agree with opposing counsel that this is an easy and straightforward case. Aetna submits that Judge O'Neill properly decided the motion for summary judgment using the appropriate standard for when the statute of limitations begins to run, and based on the facts and evidence before him, not the conjecture of Ms. Borg's attorneys. Additionally, Your Honors, Judge O'Neill used the broad discretion available to trial courts throughout this country to manage their own calendars and docket. Counsel, look, district judges aren't allowed to manage their calendars simply because they don't want a case if there's a disputed issue of material fact. The only reason we're here is because of this memo your client issued. It's a mess. Well, Your Honor, the memo is clear. It says... Clear as mud. It's a, it's titled a job elimination letter. It says, you have lost your job. Where does it say you've lost your job? Turning to the record, Your Honor, it says in the third paragraph that your last day of service, and in the fourth paragraph, I'm sorry, Your Honor, the second paragraph says this action is intended to be permanent. Employees who have lost their job as a result of these efforts. This is about Ms. Borg saying that she's lost her job. That your last day of service will be February 6th. That your job is eliminated. And, Your Honor, importantly, in the DFEH letter, it's clear that she understood that because she's, under penalty of perjury, said that she had been laid off, that she'd been denied employment on or about February 4th. Well, go back to the memo for a minute. What does employment termination date, paren, if waiver not received in paren, April 11th, 2011, mean? Well, Your Honor, I think it's a label that doesn't contradict when she performed her last day of service and when she knew that her job had been eliminated. She's going to be getting additional severance because of the generous benefits that it provides to employees that have been laid off. She's going to continue on the payroll system for nine weeks. And the employment termination date is a payroll termination date, when she's no longer going to get paid from the company. It doesn't say payroll termination date. It says employment termination date. It doesn't, Your Honor, but it ends, it comes right after the nine weeks have ended and she's going to stop getting paid from the company. She would need to stay on the payroll for that purpose. And courts have held that a payroll continuation date does not extend the statute of limitations after somebody has performed their last day of service and knows and understands that they've been terminated. It's indisputable here that Ms. – that Aetna provided evidence that Ms. Borg knew she was terminated, knew that she'd been laid off, knew that she – that's not in the record, Your Honor. And I wouldn't know. But as far as when the statute of limitation runs, it's when the cause of action accrues. And here, while Aetna recognizes that there's authority in the Ninth Circuit that the statute of limitations in a wrongful discharge claim begins to run on the notice of discharge, Aetna, Ms. Borg, and the Court all use the appropriate standard of – guided by the California Supreme Court of when the employee is actually dismissed. And that's from – Which case are you referring to, the California Supreme Court? Your Honor, that's Romano v. Rockwell in 1996. And at 501 on Romano, it says that the actual termination means the time when the employer exercises its power of dismissal. Now, there's no additional case law on a wrongful discharge claim addressing what actually terminated means. But we can look to the Eastern District of California in Johnston v. Aerojet analyzing an ADEA claim, and they say it's the date that the employee last performed service and the date the employee knows that they've been terminated, notwithstanding continued receipt of benefits. And the Johnston case, I would commend it to your Honors, because it cites from other circuits across the country, the Fifth Circuit in Payne v. Crane, where the – where the Fifth Circuit said that the cause of action accrues at discharge on the last date services are no longer completed. And in Bonham v. Dresser, that the cause of action accrues from the Third Circuit that the cause of action accrues on the last date of service, not the date that benefits in pay end. And here, Aetna provided clear evidence. We maintain that the job elimination letter is clear that her last day of service would be February 6, 2011. Her own sworn statement that on or before February 4, 2011, she had been laid off and denied employment. And we also provided a corporate declaration saying that after February 6, 2011, she did not report to work and she no longer had a job. And it's clear that Aetna had established at this point in its moving papers that it exercised the power of dismissal on February 6, 2011 under Romano. Under Johnston v. Aerojet, it's clear that we had established that plaintiff's last day of service was February 6, 2011, that she no longer had a job as February 6, 2011, and that she knew and understood that she had lost her job. For that, you rely upon the statement under oath to the DFEH and the fact that she did not appear for work as of the time that this memo said she was done. That's correct. We rely on her sworn statement. Okay. And, Your Honor, to rebut that, the nonmoving party needed to establish a genuine issue of material fact or, sorry, to establish a genuine issue of material fact. At a minimum, had to offer a sufficient explanation for the contradiction between her admitted layoff date of February, of by February 6, 2011, and the new date in her pleadings of April 11, 2001. How do you deal with the, what counsel pointed out, it's kind of corn book law, but here you have a contract that is drafted by Aetna. Lots of lawyers can help draft things and people who are working with this. Since the plaintiff here was not involved in the drafting, doesn't the contract, if there's any ambiguity, doesn't it get construed against the draftman? Well, I think here, Your Honor, that what we need to consider is what plaintiff knew. And she knew on March 15th, less than a month after she'd been, or about a month after she'd been terminated, she knew that she had been laid off and lost her job. And that Your point is not that the law doesn't construe this sort of thing against the draftman, but rather she knew, she understood this wasn't ambiguous to her because this is the way she acted. She said, signed this statement, the VFEH. The fact that she asked for a right to sue letter, even if the record doesn't say so, she must have had a lawyer who should have known what to ask for and certainly would not have wanted to go directly to court because she wouldn't have known what to do, perhaps. And then she didn't appear. Is that your point, that it's not ambiguous? I think that's certainly one thing that you can draw from it, that Ms. Borg did not see this letter as ambiguous. But another point that I would make is that under Romano v. Rockwell and Johnston v. Arrowjet, what's important is what plaintiff knew. And what she knew was that she was laid off. She swore it under oath. And she did not provide a sufficient explanation. She provided a two-paragraph declaration. Paragraph one in her declaration said, if called to testify, do so truthfully. Paragraph two says attached here to is the job elimination letter. There's no paragraph three that says here's what I understood when I received the job elimination letter. There's no paragraph four that says when I filed the DFEH claim, here's what I understood it to mean. There's no explanation in the record. And that was the evidence in its entirety before Judge O'Neill. She would need to offer some sort of sufficient explanation. And this is very similar to a sham declaration-type case. And, Your Honor, Judge Smith, just three years ago in Sloyewski v. Pullum Federal Credit Union, you were faced with a sham declaration where the plaintiff had completely contradicted his prior testimony. And there you noted that in the summary judgment case that the plaintiff was required to offer a sufficient explanation. Here we have no explanation whatsoever. And, Your Honors, I submit to you that given what was before Judge O'Neill, the evidence that Aetna had that we think was clear in establishing when the cause of action accrued and the lack of evidence provided by Ms. Borg made summary judgment necessary. And if Your Honors have any questions, I can address the motion to compel issue. Do you have any questions? I think not. Thank you very much, Your Honors. Okay. We'll have rebuttal. Thank you, Your Honors. I believe I have 3 minutes and 25 seconds left here. You're moving downward quickly, but you've got 3 minutes, sir. Okay. Thank you. Go right ahead. Thank you. I'd like to, on this DFAH complaint, I'd like to refer to a Ninth Circuit case, Kaplan v. International Alliance of Theatrical and Stage Employees. It's a 1975 case that talks about these DFAH complaints. And they say, the Court stated, this Court stated, that these complaints must be construed with the utmost liberality, mindful of the fact that these charges are made by laypersons unschooled in the technicalities of formal pleadings. When you go to the DFAH complaint, the statement is that, I allege that on or about February 4th, 2011, the following conduct occurred. That is ambiguous on its face. And it's an approximate date, an approximate date, that on or about this date these actions occurred. That was the start of the action. Now Is that what the form said in this case? Yes. It did? Yes. Absolutely. And I And in most complaints, when you're talking about a date and you're absolutely certain what it is, you still say on or about, don't you? Not necessarily. Most people do, don't they? I don't know. Okay. But these cases, but under the Ninth Circuit's own rules, these DFAH complaints are to be construed liberally and not as a way to knock the plaintiff's case out of court. How do you deal with the fact that your client didn't show up for work as of the date that at least Aetna contends she was done? Aetna didn't allow her to show up for work. They told her Did they have somebody outside to stop her from coming in? I don't know that. It's not in the record, but they made it clear that their job was being eliminated and she had the opportunity before her termination date of April 11th to find another position. So this really is But she knew at the date that she stopped working that Aetna certainly was of the position that she was done, she terminated. No. She was aware, as any reasonable person would be reading that memo, that her termination would be effective on the date the memo said it would be effective if she did not find another position in the company and if she didn't sign the waiver. That's important because you're saying she did understand that at least the Aetna intended it to be terminated on the date that they're contending, unless she could find something within the company. She knew she didn't find something within the company, so don't we get back to that date again? Your Honor, the last argument, Justice Smith, you said you used the word There's no justice in the Ninth Circuit except for that. I'm sorry. That words matter. Judges. Judge, Your Honor. Yes, Judge. Your Honor, you said words matter. Well, the words matter certainly in this case, in that memo. When the memo says the effective date your termination will be April 11th if you do not find another job within this company and if you do not sign the waiver. Both conditions had to occur for her termination to be effective. And since the standard here is a reasonable inference, that at the very least is a reasonable inference, if not the best evidence of what her termination date is, especially when it's construed against Aetna for drafting the memo in the manner it chose to do so. Okay. With that, I submit. And thank you very much for your time, judges. Thank you, all gentlemen, for your argument. The case just argued is submitted. And the Court stands in recess for the day. Thank you.
judges: Fernandez, M. Smith, Morris